Richard LITTLEFIELD

v.

INHABITANTS OF the TOWN OF LYMAN and Planning Board for the Town of Lyman.

Supreme Judicial Court of Maine.

Argued May 4, 1982.
Decided July 22, 1982.

Waterhouse, Carroll & Cyr, Erland B. Hardy (orally), James F. Molleur, Robert N. Cyr, Biddeford, for plaintiff.

Nicholas C. Scaccia (orally), Sanford, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

This case involves the issue of whether the passage of a moratorium on subdivision applications and a subsequent enactment of a zoning ordinance affecting lot size requirements are applicable to a subdivision proposal that is submitted to the Planning Board of the municipality prior to the passage of such ordinances. We conclude that the instant case is controlled by 1 M.R.S.A. § 302 and agree with the Superior Court that the application at issue was pending as that term is used in section 302. We are compelled, however, to vacate the grant of injunctive relief and to direct the entry of a judgment modified in accordance with this opinion.

### I.

The plaintiff, Richard Littlefield, proposed a subdivision to be located in the Town of Lyman (Town). He first appeared before the Town Planning Board in October of 1978 to offer for submission a preliminary plan for the subdivision.[1] The Board did not accept the plan "as Mr. Littlefield did not have the soil report to submit." The Board also requested that several additional items be noted on the plan and advised the plaintiff to submit his plan at the next meeting. Mr. Littlefield again appeared before the Board on December 21, 1978, with a preliminary plan. Two copies of the plan, soil tests and a fee of $85 were submitted. The minutes of that meeting state: "The Board accepted his [Littlefield's] preliminary plan."

On January 9, 1979, the Planning Board imposed a moratorium on the review and consideration of subdivision plans until January 9, 1980. In apparent compliance with the moratorium, no further action has been taken by the Town on Littlefield's plan. In March of 1979, the Town amended the local zoning ordinance to require a minimum per-lot area of five acres in general purpose districts. Littlefield's proposal was for such a district but his plan consisted of two acre

1. Under 30 M.R.S.A. § 4956, the municipal planning board adopts regulations governing subdivisions and reviews requests for subdivi-sion approval. A person may not build upon or sell land in a subdivision not approved by the Board.

lots, the minimum permitted prior to the amendment.

The plaintiff commenced the instant suit by bringing a complaint in Superior Court. In essence, the plaintiff sought relief from the defendants' failure to process and determine plaintiff's request for subdivision approval under the zoning ordinance as it existed prior to its amendment in March 1979. The Superior Court ruled in favor of the plaintiff and the defendants appealed.

II.

Title 1 M.R.S.A. § 302 provides in pertinent part:

Actions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby. For the purposes of this action, a proceeding shall include but not be limited to petitions or application for licenses or permits required by law at the time of their filing.

In *Cardinali v. Planning Board of Lebanon,* Me., 373 A.2d 251 (1977), we held that an application for subdivision approval was encompassed by the terms of section 302 and therefore a subdivision application is not affected by a moratorium if the application was pending at the time of the moratorium's enactment. The *Cardinali* court also noted that no special savings clause need be inserted in the ordinance enacting the moratorium. We see no reason to depart from this interpretation of section 302 in either a subdivision or zoning context, and therefore reaffirm and apply the principles of *Cardinali* in the instant case.

Indeed, a number of jurisdictions have reached a similar result without the benefit of legislative enactment of the content of section 302. The rationale of these courts

for such a rule in the context of zoning cases is persuasive. The Vermont Supreme Court has recently stated:

We are fully cognizant that the majority rule, so-called, supports appellant's position that neither the filing of an application for a permit nor issuance of the permit, even though valid and conforming to regulations, vest rights in the applicant against future changes in zoning regulations. Two major exceptions seem to be recognized, the first where there has been a substantial change of position, and the second where the amendment was enacted primarily to thwart the applicant's plans for development. Both exceptions involve a factual determination virtually impossible to arrive at short of litigation, a feature which, in our view, emphasizes the undesirability of the rule generally. The minority rule, vesting rights under the then existing regulations as of the time when proper application is filed, is not without substantial support. The minority rule is, we feel, the more practical one to administer. It serves to avoid a great deal, at least, of extended litigation. It makes for greater certainty in the law and its administration. It avoids much of the protracted maneuvering which too often characterizes zoning controversies in our communities. It is, we feel, the more equitable rule in long run application....

*Smith v. Winhall Planning Commission,* —— Vt. ——, ——, 436 A.2d 760, 761 (1981). (citations omitted). *See Western Land Equities, Inc. v. City of Logan,* 617 P.2d 388 (Utah 1980); *Mercer Enterprises, Inc. v. City of Bremerton,* 93 Wash.2d 624, 611 P.2d 1237 (1980); Annot., 50 A.L.R.3d 596 (1973).[2]

**2.** The defendants argue that our decision in *Thomas v. Zoning Board of Appeals of Bangor,* Me., 381 A.2d 643 (1978) modifies the holding of *Cardinali* and the meaning of 1 M.R.S.A. § 302 so as to require application of the vested rights theory. In *Thomas,* we applied the theory of vested rights in determining that a permit applicant acquired no right to the application of a repealed zoning ordinance. We therefore concluded that a proceeding for judicial review of the zoning board's action on the application

had lost the characteristics of a live controversy and had become moot.

The vested rights theory noted in *Thomas* is derived from limitations placed on the operation of the zoning power as a legitimate exercise of the police power. *See* 5 P. Rohan, *Zoning and Land Use Controls* §§ 36.02[4], [5], 36.06. Neither the briefs of the parties nor the opinion of the Court in *Thomas,* however, made mention of either *Cardinali* or § 302, and their interaction with this theory. The question

The Town asserts, however, that even though section 302 is applicable, the Superior Court erred in its determination that Littlefield's application was "pending" as that term is used in section 302. The Town submits that in order for an application for approval of a subdivision plan to be pending, the application "must be complete and include all information required by the applicable development and subdivision standards." Since Littlefield's plan fails to fulfill several informational requirements specified by the ordinance, the Town contends that the application is not "pending" within the meaning of section 302.

The Town in effect poses two questions— when is a subdivision proposal an application under section 302 and when is a proposal or application "pending" under that section. To a limited extent, the Court in *Cardinali* addressed these issues. In that case, we intimated that specific guidelines set forth by the municipality as to what documents *constitute an application* could have a significant bearing on the application of section 302. *Cardinali*, 373 A.2d at 255. We also noted that the completed application contemplated by 30 M.R.S.A. § 4956(2) [3] was not a necessary prerequisite to satisfaction of section 302. The *Cardinali* court stated: "We are not called upon to decide whether Cardinali has filed a completed application, but only whether *any* application, completed or not, was pending." *Id.* at 254 n.4.

In applying these principles to the case at bar, we note at the outset that no allegation is made as to a lack of good faith on the part of Littlefield in pursuing his proposal or on the part of the Town in receiving or rejecting Littlefield's application. The Town simply asserts that failure to satisfy the ordinance dictating the information to be contained in a preliminary plan thereby precludes a finding that an application is pending.

We think the Town too narrowly circumscribes the impact of section 302 on the application process. Neither Article III of the ordinance [4] nor section 4956(2) bars

---

presented by this appeal does not require that we delimit the precise contours of the coterminous relation, if any, of these two theories.

Where, as here, a statutory right in the form of § 302 is dispositive of the matter at issue, we need not look to constitutional limitations or the judicial constructs and derivations thereof to resolve the dispute. We conclude that if a party establishes his rights to the application of an ordinance under § 302 as interpreted in *Cardinali*, the failure to satisfy the "vested rights" theory of *Thomas* does not preclude application of that ordinance. That is not to say that the failure to satisfy § 302 prevents the assertion of any rights guaranteed by the Maine or United States Constitution. Since we find § 302 applicable and determinative, we do not address the Superior Court's decision concerning vested rights.

3. Section 4956(2) in effect creates two classes of applications. After an application is received by the municipality, it has 30 days to notify the applicant as to whether the application is complete or incomplete. 30 M.R.S.A. § 4956(2)(C–1). If the application is incomplete, the municipality is to inform the applicant of "the specific additional materials needed to make a complete application." *Id.* After determination that a complete application has been filed, the municipality begins "full evaluation" of the proposal. *Id.* The municipality then, pursuant to the last paragraph of § 4956(2), issues an order "denying or granting approval of the proposed subdivision or granting approval upon such terms and conditions as it may deem advisable to satisfy the criterion listed in subsection 3 [of § 4956] and to satisfy any other regulations adopted by the reviewing authority...."

4. Article III provides:
3.1 There shall be submitted to the Board a preliminary plan for study, and, if necessary, modification, and there shall be submitted a final plan. The final plan shall not be prepared until the subdivider has received from the Board written notice of a vote of a majority of the Board approving a preliminary plan. Notice of approval or disapproval shall be given within thirty (30) days of submission of the preliminary plan to the Board. Notice of approval of a final plan shall be given within thirty (30) days of submission of the final plan to the Board. Until a final plan is approved, no development steps shall be undertaken on the site of the subdivision. If requested, or if required by the Board in the public interest, a public hearing may be scheduled on a subdivision proposal. If a public hearing is ordered by the Board, interested parties will be notified 10 days in advance of the hearing and public notices posted.

 **1235**

discussion, evaluation or modification of a subdivision plan by the parties involved until a plan can be deemed "preliminary", "complete" or "final." Since a municipality can begin to act on a proposal before the fruition of these characterizations, the applicant should not be barred from the protections of section 302 when the municipality acts in this manner. We hold, therefore, that when a municipality takes the threshold step of acting on the substance of a proposal, the application process has commenced and an application is pending for purposes of section 302. However, presentment of *a plan* to a municipal clerk or board may not, in and of itself, result in a pending application under this section. When the municipality accepts the plan for the purpose of evaluating the substance of the proposal, manifests that the plan is adequate to begin the review process, or fails to advise an applicant of any restriction on the significance of acceptance of the plan, an application can be said to be pending.[5]

This distinction between presentment and acceptance is exhibited by the facts of this case. At the October meeting, the Board did not accept the plan because certain informational items were missing. In December, the Board accepted both the plan and the filing fee. We find incongruous the control exercised, in fact, by the Board over the submission and acceptance of applications at Board meetings and the contention on appeal that the application was not pending because of the failure to meet certain informational prerequisites. The Board's actions made clear that it need not accept every plan offered for submission and that its acceptance in this case manifests commencement of the evaluation process.

 Inasmuch as the plaintiff had an application pending for subdivision approval at the time of the enactment of the morato-

rium and the zoning change, we hold that Littlefield is entitled to have the Board evaluate his subdivision proposal under the ordinances which existed at the time his application was accepted. We find, however, that the Superior Court order granting a permanent injunction must be vacated for two reasons. First, the order lacks the specificity required for the issuance and enforcement of a permanent injunction. *See Sebago Lake Camps, Inc. v. Simpson*, Me., 434 A.2d 519, 523 (1981); *Vance v. Speakman*, Me., 409 A.2d 1307, 1311 n.4 (1979). Second, the record contains neither allegation nor proof of the circumstances necessary to support the grant of injunctive relief, *see Bar Harbor Banking v. Alexander*, Me., 411 A.2d 74, 78–79 (1980); *Levesque v. Pelletier*, 144 Me. 245, 248, 68 A.2d 9, 11 (1949), particularly in view of the strong policy of judicial restraint in mandating the activities of a coordinate branch of government. *See Bar Harbor Banking*, 411 A.2d at 77; *Kelly v. Curtis*, Me., 287 A.2d 426, 429 (1972).

If such a judgment were the only appropriate disposition, we would be compelled to remand for further proceedings. In the instant case, however, it is apparent that the parties have, in fact, sought *only* to resolve the question of whether to apply the new or the old ordinance provision. Because the record herein contains no evidence suggesting an unwillingness on the part of the Board to accept a judicial determination of that question, injunctive relief appears to be unnecessary. Rather, the Superior Court need only enter judgment declaring the right of the plaintiff to have his subdivision proposal considered under the Town of Lyman zoning ordinance as it existed prior to March 9, 1979, and the duty of the Board to process his proposal accordingly.

The entry is:

---

**5.** We agree with the Town that early action on the part of the municipality cannot obviate its responsibility under section 4956(3) to follow the guidelines set forth in that section in granting final *approval* to subdivision plans. That section does not require, however, that the municipality stay the evaluation process until all information on the subdivision has been provided. Moreover, we believe that section 4956(2)(C–1) is flexible enough to allow municipalities to screen proposals for adequacy of information without requiring evaluation or acceptance of a proposal.

**1236**

Judgment vacated.

Case remanded for entry of judgment declaring the rights and duties of the parties in accordance with the opinion herein.

All concurring.