[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiffs DelBonis Sand and Gravel Co. and Frank DelBonis (DelBonis) ask this Court to declare that the Town of Richmond illegally merged eight (8) contiguous two acre lots of land that they own into four (4) lots. Suit was brought against the town and various officers, collectively referenced here as "Richmond." DelBonis further asks this Court to issue a writ of mandamus to order the Town to correct its records to reflect the lot lines as they appeared prior to said merger. Richmond counters that this Court should rule that the merger was valid and thus deny DelBonis' request for issuance of a writ of mandamus.
Jurisdiction is pursuant to R.I.G.L. § 9-30-1 et seq. Under the Uniform Declaratory Judgment Act, this Court has "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.I.G.L. § 9-30-1. The purpose of the Act is "to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." R.I.G.L. § 9-30-12. See also Fireman's FundInsurance Co. v. E.W. Burman Inc., 120 R.I. 841, 391 A.2d 99, 101 (R.I. 1978) ("The obvious purpose of the Uniform Declaratory Judgments Act is to facilitate the termination of controversies").[1] This Court initially finds that there exists a justiciable controversy — namely the application of the Town's merger provision to the DelBonis' lots. Thus, the uncertainty and insecurity over the application and effect of the Town's merger provision substantially impacts DelBonis.[2]
The parties have agreed to a stipulated set of facts and accordingly, this Court will decide this issue as a matter of law and render a declaration as to the rights of the parties.
FACTS AND TRAVEL
The facts of this case are not in dispute. The subject lots, identified on Tax Assessor's Map 7E as Lots 20-1, 20-3, 20-5, and 20-7, are located on the easterly side of Beaver River Road, in the Town of Richmond, County of Washington. The subject lots are part of a larger subdivision, entitled "DelBonis Estates,"[3] and received subdivision approval from the Town of Richmond Planning Commission on February 23, 1990. As part of the subdivision approval process, DelBonis dedicated and deeded to the Town of Richmond 19.34 acres for recreational purposes and 1.25 acres for town purposes.
The subject lots at the time of subdivision approval were vacant and devoid of structures and remain so to this date. The subject lots were at all times relevant to this action held in common ownership. At the time of the subdivision process and through the final approval phase, the Town of Richmond Zoning Ordinance (Zoning Ordinance) required a minimum two acre lot size in the Area of the DelBonis Estates subdivision. In or about September 1990, the Town duly amended its Zoning Ordinance to require, effective September 1990, a three acre minimum lot size in various areas of the Town, including the DelBonis Estates subdivision.
The Town has a merger provision, Ordinance Number 18.20.030, which was in place from March 26, 1970 through December 19, 1994. The merger provision provides that:
 if two or more contiguous lots are under single ownership on the effective date of the ordinance codified in this title, such lots shall be considered to be an undivided parcel of land for the purpose of this title, and no single lot or portion thereof shall be used in violation of the requirements of this Chapter 18.20 as to the lot size and area. Ordinance Number 18.20.030(A).
Upon the September 1990 amendment of the Zoning Ordinance to require a three acre minimum lot size, the Town took action pursuant to its Zoning Ordinance to merge eight of the contiguous lots on the easterly side of Beaver River Road (along with a thirteen (13) acre parcel located immediately to the east of the subject lots) into four (4) conforming lots. DelBonis subsequently filed this complaint.
ANALYSIS
The concept of merger "generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district . . . Substandard contiguous lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception." R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 355 (R.I. 1989). Our Supreme Court has recognized that the "concept known as merger, is a valid zoning mechanism[.]" Brum v.Conley, 572 A.2d 1332, 1334 (R.I. 1990). At the time of the zoning amendment increasing the minimum lot size in the area, the Town had a valid merger provision mimicking the above standard.[4]
DelBonis' primary argument is that the Town acted illegally in merging the subject lots. DelBonis avers that because they obtained subdivision approval from the Town, they possessed vested rights in the subject lots and thus it was illegal for the Town to merge those lots. DelBonis relies on Tantimonaco v.Zoning Bd. of Review, 102 R.I. 594, 232 A.2d 385 (R.I. 1967),Mesolella v. Providence, 439 A.2d 1370 (R.I. 1982), andLittlefield v. Lyman, 447 A.2d 1231 (Me. 1982), to support their averment. DelBonis' reliance is misplaced. The cited cases all deal with the vesting of rights where zoning ordinances were changed while an application was pending or after a building permit was issued — a situation much different than the present situation.[5]
In Tantimonaco v. Zoning Bd. of Review, 102 R.I. 594,232 A.2d 385, the property owners received a building permit to construct a gas station and commenced substantial preparations toward its completion. Subsequent to the issuance of that permit, the area was rezoned to prohibit gas stations. The Court concluded that the subsequent amendment did not impair the property owners' right to continue constructing the gas station.
Likewise, in Mesolella v. Providence, 439 A.2d 1370, the property owners filed an application for a building permit and a copy of the building plans with the building inspector more than four months before the Town changed its zoning to prohibit the development. The Court allowed the property owners to proceed with their project and held that the zoning amendment in question was not in accordance with the city of Providence's comprehensive plan and was "passed to directly prevent Plaintiff's project."Id. at 1375. And finally, in Littlefield v. Lyman,447 A.2d 1231, the property owner submitted an application for subdivision approval prior to the Town imposing a moratorium on the review and consideration of subdivision plans. During the moratorium, the Town changed its zoning to require larger lot sizes than provided for in the submitted plans. The Maine Supreme Judicial Court held that the property owner had the right to have his subdivision proposal considered under the zoning ordinance as it existed prior to the moratorium.
In the present case, DelBonis had neither applied for nor obtained building permits for the lots, nor was there any application pending. DelBonis had already obtained subdivision approval. The lots were established and recorded at two (2) acres. DelBonis failed to apply for building permits or to otherwise protect the subject lots from the merger provision. In September 1990, the Town amended their zoning requirements with reference to lot size. This amendment was never appealed or challenged, and DelBonis does not now challenge the validity of that provision.[6] It is well established that "in the absence of a statute or ordinance conferring vested rights upon a subdivider . . . land in a newly approved subdivision is vulnerable to changes in zoning regulations." Arden Rathkopf and Daren Rathkopf, The Law of Zoning and Planning, § 49:12 (2004). Consequently, as of the date of the September amendment, the eight subject lots merged into four lots in order to eliminate the nonconformity.
Finally, DelBonis urges that a later amendment to the Zoning Ordinance effectively unmerged the subject lots. In 1994, the merger provision contained in the Zoning Ordinance was amended to provide in pertinent part as follows:
 The merger of contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of dimensional nonconformance shall take place at the effective date of adoption or amendment of said ordinance. This merger provision shall be effective in all districts. This merger provision shall be applicable to all lots of record except those lots of record which have been created by legal subdivision approval by the town. Zoning Ordinance § 18.48.010(B).
In order to support DelBonis' position, the ordinance would have to apply retroactively and unmerge properties that were previously merged. "It is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981). In this case, the ordinance is clear and unambiguous. It states that merger "shall take place" and the merger provision "shall be applicable," both implying that it operates prospectively. Nothing in the amendment indicates that lots previously merged would unmerge.
CONCLUSION
For the reasons set forth in this decision, this Court declines to grant DelBonis' request for relief. The Town of Richmond's merging of DelBonis' eight lots into the four lots identified on Tax Assessor's Map 7E as Lots 20-1, 20-3, 20-5, and 20-7, was in conformance with the applicable Town Zoning Ordinance. Counsel shall submit the appropriate judgment for entry.
[1] DelBonis' complaint also requests this Court to order Richmond to issue building permits upon proper application and to enjoin Richmond from interfering with the development of said lots. This Court declines to address this request for two reasons. First, for reasons discussed below, the merger of the subject lots was valid, thus the requested relief is improper.See Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I.1999) (stating that equitable relief is proper where the moving party establishs a reasonable likelihood of success on the merits, among other requirements). Second, even had this Court determined that the merger of the subject lots was invalid, DelBonis' request is overbroad and inappropriate. This Court can neither order the issuance of building permits which have not even been applied for and if denied would be subject to the appeals process as specified in the Town of Richmond Zoning Ordinance and the Rhode Island Zoning Enabling Act, R.I.G.L. §45-24-69, nor can this Court ignore the legal rights of the Town to enforce its Zoning Ordinances.
DelBonis' complaint also alleges that the Town's actions amount to a temporary taking of property without just compensation. DelBonis has submitted no evidence on this point. DelBoniss has not applied to the Town for relief from the merger provision through the Zoning Ordinance variance procedures. This Court notes that despite due process, takings and equal protection challenges, merger provisions generally pass constitutional muster. Arden Rathkopf and Daren Rathkopf, The Law of Zoning and Planning, § 49:13 (2004). As in other states, Rhode Island merger provisions have successfully weathered constitutional attacks.See generally, Skelley v. Zoning Bd. of Review,569 A.2d 1054, (R.I. 1990). Additionally, "exhaustion of administrative remedies, along with presentation of proof of dollars-and-cents losses and evidence or testimony demonstrating the denial of all economically viable use of the property in question, will usually be deemed essential in establishing a prima facie taking claim." Rathkopf, § 6:9. Given the complete lack of evidence submitted by DelBonis on this point, this Court declines to address this issue.
[2] This Court notes that DelBonis has not expressly sought relief under the Declaratory Judgment Act. The Complaint sought broad relief and memoranda submitted by DelBonis clearly indicated that plaintiffs were seeking a declaration of rights. Moreover, the Declaratory Judgment Act is intended to be remedial, and is to be liberally construed and administered. R.I.G.L. § 9-30-12; See also Berberian v. Travisono,114 R.I. 269, 332 A.2d 121 (R.I. 1975). Additionally, consistent with the Rhode Island Supreme Court's decision in RICO Corp. v. Townof Exeter, 787 A.2d 1136, 1144 (R.I. 2001), local authorities lack the power to issue declaratory judgments. Consequently, in order to bring resolution to this matter, this Court will declare the status of the subject lots.
[3] DelBonis Estates as originally approved by the Town of Richmond Planning Commission consisted of eleven (11) lots on the easterly side of Beaver River Road and twenty (20) lots on the westerly side of Beaver River Road. The present action deals only with eight (8) of the original eleven (11) lots located on the easterly side of Beaver River Road.
[4] This Court notes that DelBonis is not prevented from further subdividing the merged lots as provided under R.I.G.L. §§45-23-36 37 and the Town of Richmond Ordinance.
[5] This Court notes that the cited Rhode Island cases were decided prior to the Zoning Enabling Act of 1991. The Zoning Enabling Act provides for the creation of vested rights under R.I.G.L. § 45-24-44, which provides:
 (a) A zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the city or town prior to enactment of the new zoning ordinance or amendment.
 (b) Zoning ordinances or other land development ordinances or regulations specify the minimum requirements for a development application to be substantially complete for the purposes of this section.
 (c) Any application considered by a city or town under the protection of this section shall be reviewed according to the regulations applicable in the zoning ordinance in force at the time the application was submitted.
 (d) If an application for development under the provisions of this section is approved, reasonable time limits shall be set within which development of the property must begin and within which development must be substantially completed.
[6] Furthermore, amendments to the zoning ordinances, like other legislative acts, are presumed valid. Mesolella, 439 A.2d at 1373-1374. Perhaps, DelBonis is attempting to challenge the zoning amendment as being passed to directly prevent DelBonis' project. However, no evidence or memoranda have been submitted on this point.